Kenneth CALKINS, Yvonne Calkins, Gerald Makin, Helen Makin, Martin E. Toomey, Sr., and Mary Toomey, individually and on behalf of their minor children residing with them, and on behalf of all other persons similarly situated, Plaintiffs,

and

Alexander Kliss, Jane Kliss, David Hodeker, and Connie Hodeker, individually and on behalf of all other persons similarly situated, Curtis Williams, Addie Williams, Isahiah Floyd, and Louise Floyd, individually and on behalf of their minor children residing with them, and on behalf of all other persons similarly situated, Plaintiffs-Intervenors,

v.

Barbara B. BLUM, individually and as Commissioner of the New York State Department of Social Services, John L. Lascaris, individually and as Commissioner of the Onondaga County Department of Social Services, Sarah A. Curtis, individually and as Commissioner of the Steuben County Department of Social Services, W. Burton Richardson, individually and as Commissioner of the Monroe County Department of Social Services, Jerim Klapper, individually and as Commissioner of the Orleans County Department of Social Services, and Beverly Carbb, individually and as Commissioner of the Genesee County Department of Social Services, Defendants.

No. 78–IV–145.

United States District Court, N. D. New York.

March 4, 1981.

As Amended April 15, 1981.

Onondaga Neighborhood Legal Services, Kliss & Hodeker, Syracuse, N. Y., for plaintiffs and plaintiffs-intervenors; Maurie Heins, Syracuse, N. Y., of counsel.

Southern Tier Legal Services, Corning, N. Y., for plaintiffs; Martin A. Hotvet, Corning, N. Y., of counsel.

Greater Up-State Law Project, Rochester, N. Y., for plaintiffs and plaintiffs-intervenors Kliss and Kodeker; Rene H. Reixach, Rochester, N. Y., of counsel.

Orleans Legal Aid Bureau, Inc., Albion, N. Y., for plaintiffs-intervenors Williams; John Cebula, Albion, N. Y., of counsel.

Orleans Legal Aid Bureau, Inc., Batavia, N. Y., for plaintiffs-intervenors Floyd Genesee Branch; Raymond Rodriguez, Batavia, N. Y., of counsel.

Robert Abrams, Atty. Gen., for State of New York, Syracuse, N. Y., for defendant Blum; Anne Meadvin, Asst. Atty. Gen., Syracuse, N. Y., of counsel.

Onondaga County Dept. of Social Services, Syracuse, N. Y., Attorney for defendant Lascaris; John Barnaba, Syracuse, N. Y., of counsel.

Steuben County Dept. of Social Services, Bath, N. Y., for defendant Curtis; Wendy Lee Gould, Bath, N. Y., of counsel.

Monroe County Dept. of Social Services, Rochester, N. Y., for defendant Russo; James Robinson, Rochester, N. Y., of counsel.

Thomas Young, Holley, N. Y., for defendant Klapper.

W. Douglas Call, Batavia, N. Y., for defendant Crabb.

## MEMORANDUM—DECISION AND ORDER

MUNSON, Chief Judge.

The named plaintiffs, plaintiff-intervenors,[1] and absent proposed class members are aged, blind, or disabled adults, their spouses, and any dependent children. All named plaintiffs have sought medical assistance [medicaid] as medically needy persons. In this action for declaratory, injunctive, and monetary relief, the plaintiffs[2] aver, *inter alia*, that the defendants, administrators of the medicaid program for the State of New York, have determined the medicaid eligibility of medically needy persons in a manner different from, and less generous than, the methods used to compute the medicaid eligibility of categorically needy persons. This disparate treatment, the plaintiffs alleged, has violated certain provisions of the Social Security Act, various regulations promulgated by the Department of Health and Human Services [HHS],[3] the Equal Protection Clause of the Fourteenth Amendment, the Supremacy Clause, and 42 U.S.C. § 1983.

Presently before the Court are motions by the plaintiffs for class certifications and for summary judgment, and by the defendants for dismissal of the complaint and for cross-summary judgment.

### I.

#### A.

Title XIX of the Social Security Act of 1965, 42 U.S.C. §§ 1396–1396k, has created a cooperative federal-state medical assistance [medicaid] program designed to enable each State, "as far as practicable under the conditions of each State, to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals whose income and resources are insufficient to meet the costs of necessary medical services, . . . ." 42 U.S.C. § 1396(1). If a state chooses to participate in the medicaid program, it must submit to the Department of Health and Human Services [HHS], the administrator of the federal medicaid program, *see* 42 C.F.R. §§ 435.1–.1011, a medical assistance plan that comports with the requirements of the Social Security Act and of the regulations promulgated by HHS. 42 U.S.C. §§ 1396, 1396a; 42 C.F.R. § 435.10.

With respect to these requirements, the federal program distinguishes two groups of medicaid recipients. Pursuant to 42 U.S.C. § 1396a(a)(10)(A), a participating State must provide medical assistance to the "categorically needy," those aged, blind, or disabled individuals, and families and children, whose levels of income and resources are low enough to qualify them for federal cash assistance under the Supplementary Security Income [SSI] program, 42 U.S.C. §§ 1381–1383c, or under the Aid to Families with Dependent Children [AFDC] program, 42 U.S.C. §§ 601–644. *See* 42 C.F.R. § 435.4 (amended 45 Fed.Reg. 24883, April 11, 1980). Pursuant to 42 U.S.C. § 1396a(a)(10)(C), a participating State may provide medicaid benefits to the "medically needy", those aged, blind, or disabled individuals, and families and children, whose levels of income and resources are too low to cover the costs of medical care, but too high to qualify them for cash grants under the SSI or AFDC programs. *See* 42 C.F.R. § 435.4. This class of medically needy may

---

1. The Kliss and Floyd intervention motions were granted earlier by this Court. To the extent that the remaining motions to intervene appear unopposed, they are now granted.

2. Unless otherwise denominated, the term "plaintiffs" refers to both the plaintiffs and intervening plaintiffs.

3. Since the commencement of this action, the governing regulations have been substantially rewritten. Inasmuch as HHS has stated, however, that the new regulations reflect no substantive changes, the parties' contentions are affected only to the extent discussed in this opinion. *See* 43 Fed.Reg. 45176 (September 29, 1978).

thus be divided into two subgroups: the SSI medically needy, those aged, blind, or disabled individuals in need of medical assistance who are ineligible for SSI, and the AFDC medically needy, those families and children in need of medical assistance who are ineligible for AFDC.

The State of New York is one state that participates in the cooperative medicaid program. *See* N.Y.Soc.Serv.Law §§ 363–369. In this regard, the State of New York also operates under a state constitutional mandate to affirmatively aid the needy. N.Y.Const. Art. XVII, § 1. *See Lee v. Smith*, 43 N.Y.2d 453, 373 N.E.2d 247, 402 N.Y.S.2d 351 (1977); *Tucker v. Toia*, 43 N.Y.2d 1, 371 N.E.2d 449, 400 N.Y.S.2d 728 (1977). Under the New York medicaid scheme, which is administered by the departments of social services of the State, counties, and of the City of New York, the State furnishes medical assistance to both the categorically and medically needy. N.Y.Soc.Serv.Law §§ 366(1)(a)(1), (2) & (5).

Since the commencement of this action, the State of New York has converted to a different medical assistance plan, effective August 29, 1980. Under the new "209b" plan, as set forth in 42 U.S.C. § 1396a(f),[4] the State, instead of HHS, determines SSI eligibility, and may apply to aged, blind, or disabled individuals medicaid eligibility criteria that are more restrictive than the criteria utilized under the SSI program. *See* 42 C.F.R. § 435.121 (amended 45 Fed. Reg. 24883, April 11, 1980). Thus, this opinion must address two separate time frames, the pre- and post-conversion periods.

### B.

At dispute in this action are the budgeting procedures used by the defendants in ascertaining the eligibility for and amount of, medical assistance for the medically needy.

For purposes of clarity, the plaintiffs fall into four groups. The first group of plaintiffs is comprised of several aged, blind, or disabled, SSI medically needy persons: Kenneth Calkins, a blind resident of Onondaga County; Gerald Makin, a disabled resident of Steuben County; Mary Toomey, a disabled resident of Monroe County; Curtis and Addie Williams, disabled residents of Orleans County; Jane Kliss, a disabled resident of Monroe County; Isahiah and Louise Floyd, disabled residents of Genesee County; and Connie Hodeker, a disabled resident of Monroe County. The second group of plaintiffs represent the spouses of these aged, blind, or disabled, SSI medically needy persons, who join this action because they bear the financial responsibility for the medical and non-medical care of their medically needy spouses: Martin E. Toomey, Sr., a resident of Monroe County; Alexander Kliss, a resident of Monroe County; and David Hodeker, a resident of Monroe County. The third group of plaintiffs includes individuals who reside with SSI medically needy persons and who are AFDC medically needy by virtue of their children's deprivation of parental support, which stems from the disabilities of the parents: Yvonne Calkins, a resident of Onondaga County and a caretaker relative of two minor children; Curtis and Addie Williams, residents of Orleans County and caretaker relatives of three minor children; Isahiah and Louise Floyd, residents of Genesee County and caretaker relatives of one minor child; and Helen Makin, a resident of Steuben County and a caretaker relative of four minor children. The final group of plaintiffs consists of aged, blind, or disabled SSI medically needy persons who reside with AFDC medically needy persons, and who thus qualify as both SSI and AFDC medically needy:

---

**4.** Section 1396a(f) provides

(N)o State not eligible to participate in the State plan program established under subchapter XVI of this chapter shall be required to provide medical assistance to any aged, blind, or disabled individual (within the meaning of subchapter XVI of this chapter) for any month unless such State would be (or

would have been) required to provide medical assistance to such individual for such month had its plan for medical assistance approved under this subchapter and in effect on January 1, 1972, been in effect in such month. . . .

42 U.S.C. § 1396a(f). *See* 42 C.F.R. § 435.1(d).

Kenneth Calkins, Gerald Makin, Curtis and Addie Williams, and Isahiah and Louise Floyd.

The defendants are administrators of the New York medicaid program. The defendant Blum, Commissioner of the New York State Department of Social Services, is the chief administrator of that Department, and is responsible for exercising general supervision over all local welfare authorities, pursuant to N.Y.Soc.Serv.Law § 34. The defendants Lascaris, Commissioner of the Onondaga County Department of Social Services; Curtis, Commissioner of the Steuben County Department of Social Services; Richardson, Commissioner of the Monroe County Department of Social Services; Klapper, Commissioner of the Orleans County Department of Social Services; and Crabb, Commissioner of the Genesee County Department of Social Services, are responsible for the general operations of their respective departments, pursuant to N.Y. Soc.Serv.Law § 65.

Those plaintiffs who are aged, blind, or disabled, SSI medically needy, and those plaintiffs who are AFDC medically needy and reside with SSI medically needy persons, sought medical assistance from their local county departments of social services. In each case, these plaintiffs were informed that because of excess income, they or their spouses would have to incur varying amounts of medical expenses before satisfying the eligibility requirements of the medicaid program. None of the aged, blind, or disabled, SSI medically needy plaintiffs had the earned income of their spouses computed according to the income disregard provisions of the SSI program. Cf: 42 U.S.C. § 1382a(b); 20 C.F.R. § 416.1112 (45 Fed. Reg. 65549, October 3, 1980). Furthermore, none of these same plaintiffs had their income computed according to the SSI budgeting scheme set forth in 42 C.F.R. § 435.-721. In the cases of the AFDC medically needy plaintiffs who reside with aged, blind, or disabled, SSI medically needy spouses, none had their income determined without regard to the income of their spouses. Cf: 42 U.S.C. § 602(a)(24). Finally, the plaintiffs who are both SSI and AFDC medically needy were presented no option of having their income calculated according to the SSI budgeting methodology. Cf: 42 C.F.R. § 435.404.

After receiving their medicaid determinations from the county departments of social services, the plaintiffs sought and secured administrative fair hearings before the New York State Department of Social Services. The decisions after fair hearing affirmed the county determinations of each plaintiff's medicaid eligibility.

Alleging no adequate remedy at law, the plaintiffs raise two basic claims before this Court in regard to the defendants pre-August 29, 1980 practices. Firstly, the plaintiffs who are SSI or AFDC medically needy, and the spouses of such persons, contend that, among other requirements under the federal medicaid program, the defendants should have evaluated the income of SSI medically needy persons on the basis of the SSI budgeting methodology, and the income of AFDC medically needy persons on the basis of the AFDC budgeting methodology —or, in short, that the defendants use comparable standards in computing the eligibility of categorically and medically needy persons. Secondly, the plaintiffs who are both SSI and AFDC medically needy maintain that, pursuant to 42 C.F.R. § 435.404, they should have been permitted to select the category under which they wish to be treated. For these allegedly unlawful practices, the named plaintiffs seek declaratory judgment relief and monetary damages in the form of restitution of the amounts wrongfully paid by them for medical care.[5] Responding to these arguments, the defendants argue that the federal medicaid program imposes none of the requirements urged by the plaintiffs.

In regard to the post-conversion period, only one group of plaintiffs seeks injunctive

5. On September 1, 1979, the plaintiff Mary Toomey became categorically needy and eligible for SSI benefits. Thus, her claim for damages and declaratory judgment relief seems alive only for the period ending August, 1979.

relief in addition to declaratory judgment and monetary relief against these same allegedly unlawful practices: the plaintiffs who are AFDC medically needy and reside with SSI medically needy persons. These plaintiffs contend that under the "209b" plan their claims remain alive, and that, accordingly, they are entitled to relief.[6]

Before addressing these claims, it is necessary to turn to various preliminary issues that the parties have raised.

## II.

### A.

The plaintiffs have alleged that jurisdiction over this action lies under 28 U.S.C. § 1343, or, in the alternative, under 28 U.S.C. § 1331. Moving to dismiss the complaint for want of jurisdiction, the defendants have disputed this allegation on several grounds.

One argument raised by the defendants is that this Court should not assume jurisdiction over this case because it "would be to accept a federal court review power over almost every ruling of the [commissioners] in the day-to-day operations of the state welfare laws . . . ." *McCall v. Shapiro*, 416 F.2d 246, 250 (2d Cir. 1969). The Second Circuit, however, made this statement in the context of finding that the federal courts lacked jurisdiction under § 1343 to hear the asserted claim. *Id.* Such a statement, then, by itself, hardly amounts to a ruling that this Court must decline to exercise jurisdiction in all cases that implicate day-to-day aspects of welfare administration.

In addition, the defendants argue that pursuant to the decision of the Second Circuit in *Andrews v. Maher*, 525 F.2d 113, 118–19 (2d Cir. 1975), the Social Security Act confers no jurisdiction under § 1343(a)(3) or (4),[7] and the Supremacy Clause furnishes no jurisdictional predicate under § 1343(a)(3). The defendants have not raised a third aspect of the *Andrews* decision, namely, the Second Circuit's ruling that 42 U.S.C. § 1983 is not an "Act of Congress providing for the protection of civil rights", as this phrase appears in § 1343(a)(4). *Id.* at 119–20. In this regard, since the commencement of this action, the United States Supreme Court has substantially confirmed these positions of the Second Circuit. In *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), the Court first addressed the issue of whether the Supremacy Clause secures rights within the meaning of § 1343(3) [now (a)(3)]. *Id.* at 612–15, 99 S.Ct. at 1913–15. Resolving this question in the negative, the Court concluded that "an allegation of incompatability between federal and state statutes and regulations does not, in itself, give rise to a claim 'secured by the Constitution' within the meaning of § 1343(3)." *Id.* at 615, 99 S.Ct. at 1915. Next, the Court considered the question of whether § 1983 was an Act of Congress that provided either for "equal rights" within the meaning of § 1343(3) or for the protection of "civil rights" within the meaning of § 1343(4) [now (a)(4)]. *Id.* Reasoning that § 1983 provides no substantive rights, the Court found that this Statute cannot supply a basis for the invocation of jurisdiction un-

---

**6.** The remaining groups of plaintiffs have requested that this Court not review their claims for injunctive relief at this time, in view of alleged uncertainties surrounding the budgeting of their income under the new plan. In the absence of any opposition by the defendants, this Court shall thus dismiss these claims without prejudice.

**7.** 28 U.S.C. § 1343(a)(3) & (4) (formerly § 1343(3) & (4)) states:

(a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

der § 1343(3). *Id.* The Court ruled further that because § 1983, standing alone, offers no protection for civil rights, jurisdiction similarly would not lie under § 1343(4). *Id.* Finally, the Court held that the Social Security Act "is not a statute providing for 'equal rights'" under § 1343(3), *id.* at 623 (citing *Andrews v. Maher, supra*), or for the protection of "civil rights" under § 1343(4), *id.* (citing *McCall v. Shapiro, supra*). *See Podrazik v. Blum,* 479 F.Supp. 182, 187 (N.D.N.Y.1979) (Foley, C. J.), *aff'd,* 622 F.2d 575 (2d Cir. 1980).

In view of the *Chapman* decision, then, this Court concludes that in this action the Social Security Act and, by themselves, the Supremacy Clause and § 1983 provide no bases for jurisdiction under § 1343.

The plaintiffs, however, have not argued that the Supremacy Clause and § 1983, by themselves, confer jurisdiction under § 1343. Instead, the plaintiffs aver additionally that this Court has jurisdiction under § 1343 to decide this action because they have asserted substantial claims under the Equal Protection Clause of the Fourteenth Amendment. In support of this contention, the plaintiffs state that at least three classifications are present in this action. Firstly, because aged, blind, or disabled, SSI medically needy persons have not received the benefit of all the disregards and exclusions which are automatically accorded to SSI recipients, these persons have retained less money for their non-medical needs than those similarly situated persons who receive SSI benefits. Secondly, AFDC medically needy families of aged, blind, or disabled, SSI medically needy persons have been disadvantaged by the failure of the defendants to regard the income of the aged, blind, or disabled person as invisible in computing the budgets of AFDC medically needy families, as has been the case where actual SSI and AFDC recipients are involved. Thirdly, the plaintiffs have been disadvantaged insofar as the defendants have failed to implement the contested portions of the federal regulations regarding medicaid eligibility. Because at least the first two classifications allege a disparity between categorically and medically needy persons with respect to the amount of income available for non-medical expenses, the plaintiffs contend that these classifications raise substantial equal protection claims that confer jurisdiction upon this Court under § 1343. Citing *Greklek v. Toia,* 565 F.2d 1259 (2d Cir. 1977), *cert. denied sub nom. Blum v. Toomey,* 436 U.S. 962, 98 S.Ct. 3081, 57 L.Ed.2d 1128 (1978); *Aitchison v. Berger,* 404 F.Supp. 1137, 1142–43 (S.D.N.Y. 1975), *aff'd,* 538 F.2d 307 (2d Cir.), *cert. denied,* 429 U.S. 890, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976).

In response to these arguments, the defendants maintain that the Equal Protection Claims lack substantiality because, in actuality, there is no disparity of treatment between the categorically and medically needy; because the defendants have merely followed the requirements under the federal statutes and regulations, and because the plaintiffs' claims fall under a rational basis standard of review. Given the insubstantiality of the Equal Protection Claims, the defendants contend, this Court consequently lacks jurisdiction to consider the pendent statutory claims raised by the plaintiffs.

With respect to the arguments asserted by the parties, the Supreme Court catalogued the various tests for insubstantiality in its seminal decision in *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974):

"so attenuated and unsubstantial as to be absolutely devoid of merit," . . . ; "wholly insubstantial," . . . ; "obviously frivolous," . . . ; "plainly unsubstantial," . . . ; or "no longer open to discussion: . . . . *Id.* at 536–37, 94 S.Ct. at 1378–79 (citations omitted)

"so insubstantial, implausible, foreclosed by prior decisions of this Court and otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court, whatever may be the ultimate resolution of the federal issues on the merits." *Id.* at 543, 94 S.Ct. at 1382 (quoting *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661,

666–67, 94 S.Ct. 772, 777, 39 L.Ed.2d 73 (1974)).

After examining the Equal Protection issues raised in *Hagans* in light of these tests, the Court found that it was not so "immediately obvious . . . from the face of the complaint" that the challenged practices were "so patently rational as to require no meaningful consideration." *Id.* at 541, 94 S.Ct. at 1381.

Applying the *Hagans* substantiality tests to the plaintiffs' complaints, this Court similarly concludes that the allegations of disparate treatment between categorically and medically needy persons are not insubstantial. *See Greklek v. Toia*, 565 F.2d at 1261; *Friedman v. Berger*, 547 F.2d 724, 727 n. 6 (2d Cir. 1976), *cert. denied*, 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977). Accordingly, in view of the substantiality of the constitutional claims, this Court has jurisdiction under § 1343 over this action, and thus over the plaintiffs' pendent claims. *See Miller v. Youakim*, 440 U.S. 125, 132 & n. 13, 99 S.Ct. 957, 963, 59 L.Ed.2d 194 (1979); *Hagans v. Lavine*, 415 U.S. at 543, 94 S.Ct. at 1382; *United Mine Workers v. Gibbs*, 383 U.S. 715, 724–28, 86 S.Ct. 1130, 1137–1140, 16 L.Ed.2d 218 (1966); *Holley v. Lavine*, 605 F.2d 638, 646 (2d Cir. 1979), *cert. denied sub nom. Blum v. Holley*, 446 U.S. 913, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980).

Since jurisdiction exists under § 1343, it is unnecessary to consider the plaintiffs' allegation of jurisdiction under § 1331.[8]

■ The county defendants urge dismissal of the complaint under Fed.R.Civ.P. 12(b) for want of jurisdiction and for failure to state a claim upon which relief can be granted, on the ground that they are immune under the Eleventh Amendment and under § 1983 from claims from retroactive monetary relief.[9] Relying on *Quern v. Jordan*, 440 U.S. 322, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 47 (1977); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). To the extent, however, that the plaintiffs seek declaratory and injunctive relief, in addition to monetary relief; that the county defendants are being sued in both their individual and official capacities; and that these objections thus actually challenge the scope of any relief which might be awarded the plaintiffs, dismissal of the complaint under 12(b) seems unwarranted.

### C.

Several defendants allege, as a further ground for dismissal of the complaint for failure to state a claim, that the plaintiffs, in asserting a claim under § 1983, have failed to allege that the defendants acted in bad faith, or to deprive the plaintiffs of any rights. Relying on *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

■ In this regard, it is now settled that a plaintiff need only allege two elements for recovery under § 1983: (1) that the defendant deprived him of a right secured by the Constitution or laws of the United States; and (2) that the defendant deprived him of this right while acting under "color

---

**8.** Since the writing of this opinion, Congress enacted P.L. 96–486, eliminating the $10,000 amount in controversy requirement for actions under 28 U.S.C. § 1331. The plaintiffs have not raised the question of whether an implied private cause of action exists directly under the Social Security Act. *See Transamerica Mortgage Advisors, Inc., v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979).

**9.** The plaintiffs object that the Commissioner of the Monroe County Department of Social Services is collaterally estopped from raising an Eleventh Amendment objection, by virtue of the litigation in *Holley v. Lavine*, 464 F.Supp. 718 (W.D.N.Y.), *aff'd*, 605 F.2d 637 (2d Cir.

1979), *cert. denied sub nom. Blum v. Holley*, 446 U.S. 913, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980). Citing *Parklane Hosiery Company v. Shore*, 439 U.S. 322, 98 S.Ct. 1875, 56 L.Ed.2d 387 (1979). In *Parklane*, however, the Court noted that offensive use of the collateral estoppel doctrine lies within the discretion of the Court. *Id.* at 331. Moreover, where it would be unfair to the defendant, the Court indicated that the doctrine ought not to apply. *Id.* See *Olegario v. United States*, 629 F.2d 204 (2d Cir. 1980). In the case at bar, which was commenced in 1978, this Court shall decline to apply this doctrine, in the interests of justice.

of state law." *See Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980); *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155–56, 98 S.Ct. 1729, 1732–33, 56 L.Ed.2d 185 (1978); *Adickes v. Kress & Company*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970); *Morrison v. Jones*, 607 F.2d 1269, 1275 (9th Cir. 1979), *cert. denied*, 445 U.S. 962, 100 S.Ct. 1648, 64 L.Ed.2d 237 (1980); *Coffy v. Multi-County Narcotics Bureau*, 600 F.2d 570, 576 (6th Cir. 1979). *See also, Monroe v. Pape*, 365 U.S. 167, 171, 183–87, 81 S.Ct. 473, 481–84, 5 L.Ed.2d 492 (1961), *overruled in part and on other grounds, Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 61 (1978). Thus, in § 1983 actions for damages against public officers, the plaintiffs need not allege bad faith. *Gomez v. Toledo*, 100 S.Ct. at 1924.

█ Here the plaintiffs have averred that the defendants have "refuse[d] to determine the eligibility for and amount of medical assistance" for the SSI and AFDC medically needy in accordance with federal requirements, and have "refuse[d] to advise persons who are both SSI and AFDC medically needy of their alleged right to have their medicaid eligibility computed under the category of their choice, all in violation of various alleged constitutional and statutory rights enjoyed by the plaintiffs. Examining these challenges to the personal actions of the defendants, and accepting as true these claims that the defendants, in effect, knowingly and intentionally disregarded certain asserted federal rights of the plaintiffs, this Court finds that the plaintiffs have stated a claim for relief under § 1983. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Williams v. Vincent*, 508 F.2d 541, 543 (2d Cir. 1974). *See also, Owens v. Haas*, 601 F.2d 1242, 1247 (2d Cir. 1979); *Heimbach v. Village of Lyons*, 597 F.2d 344, 347 (2d Cir. 1979). If, by their reliance upon *Rizzo*, the county defendants are alluding to the rule that the doctrine of respondeat superior cannot create liability under § 1983, or if, by their assertion that the plaintiffs must plead "bad faith", the defendants are claiming a defense of "good faith" or a qualified immunity, an inquiry into these contentions appears inappropriate at this time, in view of the limited nature here of an inquiry into the sufficiency of the complaint.

### D.

The defense is also raised that the plaintiffs Gerald and Helen Makin are time-barred under N.Y. CPLR § 217 from maintaining this § 1983 action on behalf of themselves and of an alleged class, inasmuch as they failed to commence their suit within four months after their October 5, 1977 decision after fair hearing became final and binding upon them. Because a New York State court would have dismissed the Makins' claims as time-barred in an Article 78 review proceeding of the agency's actions, the defendants argue, this Court, in the interests of federalism, should also dismiss their claims. Citing *Guaranty Trust Company v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

█ In making this argument, however, the defendants have plainly ignored the rule in this Circuit that the three year statute of limitations contained in N.Y. CPLR § 214(2), which applies to liabilities "created by statute", generally governs suits brought in federal courts under § 1983. *See, e. g., Leonhard v. United States*, 633 F.2d 599, at 615–16 (2d Cir. 1980) and cases cited therein. Accordingly, in the absence of any applicable exception to this general rule, and because the Makins commenced their action on April 7, 1978, well before the end of the three year statute of limitations period, the suit is not time-barred.

Finally, the defendants contend that this Court should invoke the doctrine of abstention, and refuse to entertain the action. In order to address properly the arguments raised by the defendants, it is useful to consider initially the Supreme Court's decision in *Colorado River Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1975), a case that furnishes an analytical framework for the evaluation

of abstention claims. *See Naylor v. Case and McGrath, Inc.*, 585 F.2d 557, 564–65 (2d Cir. 1978). After admonishing federal tribunals at the outset of its opinion in *Colorado River* that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule," 424 U.S. at 813, the Court identified three categories of circumstances that would be appropriate for abstention.

█ *Firstly*, abstention may be proper " 'in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law.' " *Id.* 424 U.S. at 814, 96 S.Ct. at 1244 (quoting *County of Allegheny v. Frank Mashuda Company*, 360 U.S. 185, 189, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1939) (citing *Lake Carriers Association v. MacMullan*, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972)); *Railroad Commission of Texas v. Pullman Company*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)). *See Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 306, 99 S.Ct. 2301, 2313, 60 L.Ed.2d 895 (1979); *Goldberg v. Carey*, 601 F.2d 653, 658–59 (2d Cir. 1979); *Winter v. Lavine*, 574 F.2d 46, 69 (2d Cir. 1978); *McRedmond v. Wilson*, 533 F.2d 757, 760–64 (2d Cir. 1976). *See also, Naylor v. Case and McGrath, Inc.*, 585 F.2d at 564–65. Construing this *Pullman* abstention rule, the Second Circuit has set forth three "essential conditions" that must be satisfied before a Court can decline jurisdiction:

> [1] the state statute [must] be unclear or the issue of state law [must] be uncertain ...; [2] the resolution of the federal issue [must] depend upon the interpretation to be given to the state law, ... and ... [3] the state law [must] be susceptible of an interpretation that would avoid or modify the federal constitutional issue.

*McRedmond v. Wilson*, 533 F.2d at 761, *cited in Winter v. Lavine*, 574 F.2d at 69. In this regard, the Second Circuit has also ruled that "when state and federal laws overlap ..., plaintiffs are not precluded from choosing the federal forum." *Id.* at 763. *See Connecticut State Federation of Teachers v. Board of Education Members*, 538 F.2d 471, 485 (2d Cir. 1976).

█ With respect to the pre-August 29, 1980 period, these three conditions have not been met. First, here there is no state law claim, separate and distinct from the federal claims, that, "if resolved in favor of [these plaintiffs], 'would make it wholly unnecessary to consider the [constitutional] claim[s].' " *Id.* at 484–85 (citation omitted). As the plaintiffs note, the State, as well as federal, statutory schemes mandate that state and county officials follow federal requirements in determining what income and resources to consider in the computation of medicaid eligibility. *See* N.Y.Soc. Serv.Law § 366(2)(b). Thus, the issues in this action rest upon *federal* statutory and regulatory law and the defendants' interpretation thereof. *See Moore v. Sims*, 442 U.S. 415, 427–29, 99 S.Ct. 2371, 2379–80, 60 L.Ed.2d 994 (1979); *McNeese v. Board of Education*, 373 U.S. 668, 674, 83 S.Ct. 1433, 1437, 10 L.Ed.2d 622 (1963). Accordingly, inasmuch as the controlling nature of the pre-August 29, 1980 claims does not turn solely upon state policies and law, these claims do not appear to fall within the scope of the *Pullman* doctrine.

With respect to the post-conversion claims of the AFDC medically needy plaintiffs who reside with SSI medically needy persons, the implementation of the "209(b)" plan has not completely displaced the paramount role of federal law in this area. Specifically, the conversion to a "209(b)" plan does not diminish the supremacy of federal law in the computation of medicaid eligibility for AFDC recipients. *See* 42 C.R.F. § 435.1(d). *Cf*: 42 C.F.R. §§ 435.401, 435.520, 435.812 (1980), 435.814 (1980), 435.831 (1980).

█ *Secondly*, abstention may be proper in cases that present "difficult questions of state law bearing policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River*, 424 U.S. at 814, 96 S.Ct. at 1244 (citing *Louisiana Power & Light Company v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959)). *See Burford v. Sun Oil Company*,

319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). With respect to this *Burford* category, the Court has noted that "[i]t is enough that exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River*, 424 U.S. at 814, 96 S.Ct. at 1244 (citing *Alabama Public Services Commission v. Southern Rail Company*, 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951); *Burford v. Sun Oil Company, supra*). See *Naylor v. Case and McGrath*, 585 F.2d at 564–65; *Mathias v. Lennon*, 474 F.Supp. 949, 954–55 (S.D.N.Y.1979); *Grossman v. Axelrod*, 466 F.Supp. 770, 779 (S.D.N.Y. 1979).

In the instant action, although the State has certainly adopted a regulatory scheme of incalculable importance to its people, the difficult questions of law involve primarily federal statutes and regulations, as interpreted by the defendants. Application of the *Burford* rule thus seems unwarranted.

■ *Thirdly*, abstention may be appropriate if there is a pending state action. *Colorado River*, 424 U.S. 816, 96 S.Ct. at 1245 (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). *See Moore v. Sims*, 442 U.S. at 423–24, 99 S.Ct. at 2377–78 (1979); *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *Judice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977). The defendants Richardson and Lascaris invoke this *Younger-Judice* doctrine on the ground that the plaintiffs Toomey and Calkins commenced this action at a time when proceedings were pending before the State Department of Social Services. Inasmuch as these plaintiffs have, by now, received decisions after fair hearing, however, abstention on this basis appears inappropriate.

■ The defendants forcefully argue, however, that this Court should dismiss this action because the plaintiffs have not availed themselves of state judicial remedies. While not argued by the plaintiffs,

clearly there is no exhaustion of state judicial remedies requirement under § 1983. See, *e. g.*, *Meyer v. Frank*, 550 F.2d 726, 729 (2d Cir.), *cert. denied*, 434 U.S. 830, 98 S.Ct. 112, 54 L.Ed.2d 90 (1977). "[R]elief under the Civil Rights Act may not be defeated because relief was not first sought under state law which provided a remedy." *McNeese v. Board of Education*, 373 U.S. at 671, 83 S.Ct. at 1435. In short, "abstention should not be ordered merely to await an attempt to vindicate [claims] in a state court." *Wisconsin v. Constantineau*, 400 U.S. 433, 439, 91 S.Ct. 507, 511, 27 L.Ed.2d 515 (1971) (citing *Zwickler v. Koota*, 389 U.S. 241, 250–51, 88 S.Ct. 391, 396–97, 19 L.Ed.2d 444 (1967)).

Accordingly, this Court shall not dismiss any of the plaintiffs' claims under the doctrine of abstention.

### III.

The plaintiffs Kenneth and Yvonne Calkins, Gerald and Helen Makin, Martin and Mary Toomey, Sr., Curtis and Addie Williams, and Isahiah and Louise Floyd, individually and on behalf of their minor children residing with them, have moved to certify this suit as a class action under Fed.R.Civ.P. 23(a) and 23(b)(2) on behalf of the following persons:

All persons who are now or may in the future be recipients of or eligible for medicaid benefits for the medically needy in the State of New York who reside with their spouses and/or minor children and are aged, blind, or disabled; their spouses who reside with them; and their minor children who reside with them.

The plaintiffs Alexander and Jane Kliss, and David and Connie Hodeker, seek to represent a subclass of this larger class:

All persons who have been, are now or may in the future be recipients of medicaid benefits for the medically needy in the State of New York who are aged, blind, or disabled and reside with their spouses who have earned income, and their spouses.

In order to proceed as class actions, the plaintiffs must first establish that their proposed classes satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Fed.R.Civ.P. 23(a).

■ Pursuant to Rule 23(a)(1), the class must be so numerous that joinder of all persons comprising the class would be impractical. In their complaint, the plaintiffs Calkins *et al.* aver upon information and belief that their proposed class, which represents both aged, blind, or disabled, SSI medically needy persons and AFDC medically needy persons, comprises "a large percentage" of the more than 150,000 medically needy persons who receive medicaid in New York each month. In an attorney's affidavit, moreover, it is alleged that the number of persons that would be affected by a decision to order the extension of SSI income disregards to ineligible spouses of aged, blind, or disabled medically needy persons is approximately 25,000. Given these allegations, this Court concludes that the plaintiffs Calkins *et al.* have met their burden of showing the impracticability of joinder. *See Frost v. Weinberger,* 515 F.2d 57, 65 (2d Cir. 1975), *cert. denied sub nom. Frost v. Mathews,* 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976); *Demarco v. Edens,* 390 F.2d 836, 845 (2d Cir. 1968). *See also, Lloyd v. Industrial Bio-Test Laboratories,* 454 F.Supp. 807, 812 (S.D.N.Y.1978).

■ Turning to the commonality requirement of Rule 23, the plaintiffs must also establish the existence of a question of law or fact that is common to the alleged classes. Fed.R.Civ.P. 23(a)(2). Here, the plaintiffs Calkins *et al.* contend that the following question is common to the class:

Whether federal law and regulations and the Constitution require the defendants to apply to aged, blind, or disabled, SSI medically needy persons and AFDC medically needy persons living with them at least as beneficial a methodology for computing income as is applied for other medicaid recipients actually receiving SSI or AFDC.

In view of the facts and issues presented by both the plaintiffs Calkins *et al.* and the defendants, commonality appears to exist.

■ Under Fed.R.Civ.P. 23(a)(3) the plaintiffs Calkins *et al.* have also averred that their claims are typical of the class that they seek to represent. In this regard, although each individual of the proposed class would probably present a unique factual situation, inasmuch as the actual levels of income necessarily vary from person to person, the claims raised by the named parties seemingly typify the claims of the absent class members. Hence, this Court concluded that typicality of claims exists.

■ As a final requirement of Rule 23(a), the representative parties must fairly and adequately represent the interests of the class. Fed.R.Civ.P. 23(a)(4). In the instant action, no antagonistic conflict of interest appears to exist between the plaintiffs Calkins *et al.* and the absent class members. Indeed, absent class members would probably benefit from any determination favorable to the named plaintiffs. Moreover, this Court acknowledges that the plaintiffs' attorneys, employed by grantees of the Legal Services Corporation, are experienced in federal court class action litigation concerning the medicaid program. In view of the foregoing factors, the plaintiffs Calkins *et al.* seemingly can protect adequately and fairly the interests of their proposed class.

■ Having satisfied the requirements of Rule 23(a), the plaintiffs Calkins *et al.* must additionally meet one of the three criteria of Rule 23(b). In this regard, these plaintiffs maintain that certification falls under Rule 23(b)(2), alleging that the

[d]efendants have acted or refuse to act on grounds generally applicable to the class, namely, they have refused to conform to federal requirements for computing plaintiffs' eligibility for and amount of medicaid benefits, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole.

*Cf: Greklek v. Toia,* 565 F.2d at 1260–61.

Certainly, civil rights actions can be regarded as the "paradigmatic 23(b)(2) class

suits, for they seek classwide structural relief that would redound equally to the benefit of each class member." *Marcera v. Chinlund*, 595 F.2d 1231, 1240 (2d Cir.), *vacated on other grounds sub nom. Lombard v. Marcera*, 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281 (1959). In this circuit, however, "one seeking class action status under Rule 23(b)(2) ... must present additional reasons for obtaining certification of the class under 23(b)." *Davis v. Smith*, 607 F.2d 540 (2d Cir. 1979). Hence, "where retroactive monetary relief is not at issue, and the prospective benefits of declaratory and injunctive relief will benefit all members of a proposed class to such an extent that the certification of a class would not further the implementation of the judgment, a district court may decline certification." *Id.*

Noting that retroactive monetary relief is in fact at issue in this action, the plaintiffs Calkins *et al.* go on to assert, as "additional reasons", that class certification is necessary to avoid problems of mootness, enforcement, and class identification, and to effect a suggested mechanism for providing relief to persons affected by a judgment in favor of the named plaintiffs, namely, notice to class members. With respect to the particular concern for mootness, the aged, blind, or disabled status of many of these plaintiffs indisputably creates problems of mootness.[10] Thus, in order to "avert the substantial possibility" of mootness, *Greklek v. Toia*, 565 F.2d at 1261; *see Franks v. Bowman Transportation Company, Inc.*, 424 U.S. 747, 752–57 & n.6, 96 S.Ct. 1251, 1258–61, 47 L.Ed.2d 444 (1976); *Sosna v. Iowa*, 419 U.S. 393, 402, 95 S.Ct. 553, 558, 42 L.Ed.2d 532 (1975); *Marcera v. Chinlund*, 595 F.2d at 1237 n.9; *Lasky v. Quinlan*, 558 F.2d 1133, 1136 (2d Cir. 1977); *see generally United States Parole Commission v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980), and for the other reasons presented by the plaintiffs, this suit should proceed as a class action.

The defendants maintain, however, that class action certification is nonetheless superfluous because this Court should assume that the defendants would apply any determination in favor of the plaintiffs to all individuals similarly situated, and because any judgment entered by this Court would fall within the scope of the doctrine of res judicata. Relying on *Domingo v. Toia and Fahey*, 77–CV–217 (N.D.N.Y. August 24, 1977) (Foley, J.) (citing *Wells v. Malloy*, 510 F.2d 74, 76 n.3 (2d Cir. 1975); *Feld v. Berger*, 424 F.Supp. 1356, 1363 [S.D.N.Y.1976]).

▆ In regard to these arguments by the defendants, plainly neither the doctrine of res judicata, nor the doctrine of collateral estoppel can, by themselves, defeat class action certification; to hold otherwise would render nugatory the provisions of Rule 23. Moreover, the clear weight of judicial authority has not chosen to assume, in cases like this, that officials would fully apply any relief to all persons similarly situated, and instead has reserved this instance of noncertification for those situations where the defendants have given affirmative assurances that they would, in fact, extend such relief. For example, in *Wells v. Malloy*, 510 F.2d at 76 n.3 (2d Cir. 1975), the Court noted that the parties had *stipulated* that the Commissioner would apply any court determination favoring the plaintiffs to all persons similarly situated. In *Galvan v. Levine*, 490 F.2d 1255, 1261 (2d Cir. 1973), *cert. denied*, 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974), the Court upheld the denial of class certification where the State had "*made it clear* that it [understood] the judgment to bind it with respect to all claimants...." (emphasis supplied). In *Bacon v. Toia*, 437 F.Supp. 1371, 1383 n.11 (S.D.N.Y.1977), *aff'd without opinion*, 580 F.2d 1044 (2d Cir. 1978), the Court chose not to deny class certification, finding that "there ha[d] been *no assurances* by the State that its welfare officials [would] apply the Court's judgment to all similarly situated persons." (Emphasis supplied).

---

10. Indeed, the plaintiff Mary Toomey, a victim of the degenerative disease of multiple sclero-

sis, already has moved into a skilled nursing facility.

Here, the defendants have given no definite assurances that they would apply a determination of this Court in favor of the named plaintiffs to all individuals similarly situated. *See Lucas v. Wasser,* 73 F.R.D. 361, 363 (S.D.N.Y.1976); *Echevarria v. Carey,* 402 F.Supp. 183, 189 (S.D.N.Y.1975), *aff'd without opinion,* 538 F.2d 309 (2d Cir.), *vacated on other grounds,* 429 U.S. 808, 97 S.Ct. 44, 50 L.Ed.2d 68 (1976) *and* 556 F.2d 572 (2d Cir. 1977); *see also Rodriquez v. Percell,* 391 F.Supp. 38, 41 (S.D.N.Y.1975). In the absence of such assurances, this Court is not inclined to indulge in the assumption urged by the defendants.

Accordingly, this Court concludes that the plaintiffs Calkins *et al.* have established the propriety of class action certification, and hereby certifies a class consisting of all persons who are, as of the date of the commencement of this action, or who may in the future be recipients of or eligible for medicaid benefits for the medically needy in the State of New York who reside with their spouses and/or minor children and are aged, blind or disabled, and hereby certifies a class consisting of:

1. All persons who are, as of the date of the commencement of this action, or who may in the future be recipients of or eligible for medicaid benefits for the medically needy in the State of New York who reside with their spouses and/or minor children and are aged, blind or disabled.

2. Their spouses who reside with them.

3. Their children who reside with them.

Inasmuch as the plaintiffs Alexander and Jane Kliss, David and Connie Hodeker, and their proposed class fall within this class definition, it is unnecessary to address their motions for class action certification.

## IV.

Because the papers reflect no genuine triable issue as to any material fact, this Court shall now consider the substantive claims urged by the parties in their motions for summary judgment and for cross-summary judgment. In this regard, the Court is mindful of its duty to address any "dispositive issues of statutory ... law ... before reaching constitutional issues." *Wolston v. Reader's Digest Association, Inc.,* 443 U.S. 157, 160–61 n.2, 99 S.Ct. 2701, 2704, 61 L.Ed.2d 450 (1979). *See Califano v. Yamasaki,* 442 U.S. 682, 692, 99 S.Ct. 2545, 2553, 61 L.Ed.2d 176 (1979); *Hagans v. Lavine,* 415 U.S. at 543, 94 S.Ct. at 1382.

## A.

The threshold inquiry here concerns the general requirements of the federal statutes and regulations with respect to the treatment of the medically and categorically needy.

The plaintiffs contend that two provisions of the Social Security Act, namely, 42 U.S.C. §§ 1396a(a)(10)(C) and 1396a(a)(17), establish a principle of comparability which mandates that medically needy persons receive treatment comparable to that received by categorically needy persons in the determination of eligibility for, and amount of, medical assistance, so that medically needy persons not be left worse off than if they were actual recipients of cash assistance benefits. It is alleged, further, that these statutory provisions create two aspects of comparability. On the one hand, in ascertaining income available to the medically needy, administrators must disregard that income which would be disregarded under the categorical cash assistance programs. Citing H.R.Rep.No.213, 89th Cong., 1st Sess. 68 (1965); S.Rep.No.404, 89th Cong., 1st Sess., *reprinted* in 1965 U.S.Code Cong. and Admin.News 1943, 2018; 42 C.F.R. §§ 435.-831(a), .822(b); *Greklek v. Toia, supra; Dumbleton v. Reed,* 40 N.Y.2d 586, 357 N.E.2d 363, 388 N.Y.S.2d 893 (1976); *Martin v. Lavine,* 39 N.Y.2d 72, 346 N.E.2d 794, 382 N.Y.S.2d 956 (1976); *Newborn v. Toia,* 89 Misc.2d 409, 391 N.Y.S.2d 786 (Sup.Ct. Kings Co.1976). On the other hand, and as a corollary to the above, medically needy persons are entitled to retain at least as much income for their non-medical maintenance needs as categorically needy persons, in order that the income of medically needy

persons not be reduced below the State standard of need. Citing H.R.Rep.No.213, 89th Cong., 1st Sess. 68 (1965); S.Rep.No. 404, 89th Cong., 1st Sess., *reprinted in* U.S. Code Cong. and Admin.News at 2019; 42 C.F.R. §§ 435.814, .816; *Aitchison v. Berger*, 404 F.Supp. 1137 (S.D.N.Y.1975), *aff'd*, 538 F.2d 307 (2d Cir.), *cert. denied*, 429 U.S. 890, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976); *Dominquez v. Milliken*, CCH Medicare & Medicaid Guide ¶ 26,633 (W.D.Mich.1973); *Schlemowitz v. Lavine*, 75 Misc.2d 529, 347 N.Y.S.2d 133 (Sup.Ct. Monroe Co.1973).

Turning to the language of the statutory provisions relied upon by the plaintiffs, *see, e. g., Consumer Product Safety Commission v. G.T.E. Sylvania, Inc.*, 447 U.S. 102, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980), Section 1396a(a)(10)(C)(i) provides that State must use "comparable standards" in determining the medicaid eligibility of the medically needy:

> (a) A State plan for medical assistance must—
>
> . . . .
>
> (10) provide—
>
> . . . .
>
> (C) if medical assistance is included for any group of individuals who are [not recipients of, *e. g.*, AFDC or SSI] and who do not meet the income and resources requirements of the appropriate State plan, or the supplemental security income program, . . .
>
> (i) for making medical assistance available to all individuals who would, except for income and resources, be eligible for aid or assistance under any such State plan or to have paid with respect to them [SSI], and who have insufficient (*as determined in accordance with comparable standards*) income and resources to meet the costs of necessary medical and remedial care and services, . . . (emphasis supplied).

Certainly the regulations promulgated by HHS, as interpreted by the Second Circuit, have contemplated that this provision mandates comparable eligibility requirements as between the categorically and medically needy. *See Caldwell v. Blum*, 621 F.2d 491

(2d Cir.), *application for stay denied*, 441 U.S. 153, 100 S.Ct. 1635, 60 L.Ed.2d 115 (Marshall, Circuit Justice), *petition for cert. filed*, 49 U.S.L.W. 3005, docket number 79–2034 (U.S. July 8, 1980). Title 42 C.F.R. § 435.401(c) provides that a State medicaid agency

> must not use requirements for determining eligibility for optional coverage groups [e. g., the medically needy] that are—
>
> (1) For families and children, *more restrictive* than those used under the State's AFDC plan; and (2) For aged, blind and disabled individuals, *more restrictive* than those used under SSI . . . (emphasis supplied).

Furthermore, various decisions of federal courts have held that § 1396a(a)(10)(C)(i) requires states to prescribe standards for the computation of medical assistance for medically needy persons that are no more restrictive than those standards governing the eligibility of categorically needy persons. *See, e. g., Caldwell v. Blum, supra*, 621 F.2d 491 (2d Cir. 1980) (upholding preliminary injunction against enforcement of New York transfer-of-assets prohibition that applied only to the medically needy); *Fabula v. Buck*, 598 F.2d 869 (4th Cir. 1979) (Md. transfer-of-assets prohibition that applied only to the medically needy held invalid); *Greklek v. Toia, supra*, 565 F.2d 1269 (2d Cir. 1977) (N.Y. standard for deduction of work expenses that was more restrictive for medically needy persons than for categorically needy persons held invalid). *But see Dawson v. Myers*, 622 F.2d 1304, 1310 (9th Cir.), *cert. granted*, —— U.S. ——, 101 S.Ct. 353, 66 L.Ed.2d 214 (1980).

Section 1396a(a)(17)(B) supplements § 1396a(a)(10)(C)(i), providing that a State plan for the determination of medicaid benefits must

> (17) include reasonable standards (*which shall be comparable for all groups* . . .) for determining eligibility for and the extent of medical assistance under the plan which . . . (B) provide for taking into account only such income and resources as are, as determined in accord-

ance with standards prescribed by the Secretary, available to the applicant or recipient and (in the case of an applicant who would, except for income and resources, be eligible [to receive AFDC or SSI money payments]) *as would not be disregarded* . . . in determining his eligibility for such aid, assistance, or benefits. (emphasis supplied).

*See* 42 C.F.R. §§ 435.831(a)(1) & (2). Plainly the language of this section does not distinguish groups: "all groups" appears to mean *all groups*. Indeed, in construing this provision, courts have concluded that State agencies must apply comparable income disregards to both medically and categorically needy persons. *See, e. g., Greklek v. Toia*, 565 F.2d at 1261; *Friedman v. Berger*, 547 F.2d 724, 728 (2d Cir. 1976), *cert. denied*, 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977); *Martin v. Lavine*, 39 N.Y.2d at 73–74, 346 N.E.2d at 795, 382 N.Y.S.2d at 957.

 In view of this statutory and judicial authority, it seems clear that the medicaid federal scheme, in general, mandates comparable treatment between categorically and medically needy individuals. Moreover, as this Court has recently held, the State's conversion to a "209(b)" plan has no preemptory effect upon the applicability of the principle of comparability to the determination of medicaid eligibility for aged, blind, disabled, or AFDC medically needy persons. *See Caldwell v. Blum*, 78–CV–569 (N.D.N.Y. November 4, 1980).

## B.

Relying upon this federal scheme, the aged, blind, or disabled medically needy plaintiffs and their ineligible spouses raise the question of whether, during the preconversion period, the principle of comparability, and the regulations that embody this principle, require medicaid agencies to apply to aged, blind, or disabled medically needy persons the SSI budgeting methodology applied to categorically needy individuals who receive SSI. For example, the plaintiffs argue that the defendants should apply the SSI income disregards to the earned income of ineligible spouses of aged, blind, or disabled medically needy persons.[11] Additionally, the plaintiffs contend that the defendants should apply the SSI eligibility scheme set forth in 42 C.F.R. § 435.721 to aged, blind, or disabled medically needy persons.[12]

In response to these arguments, the defendants contend that the principle of comparability set forth in 42 U.S.C. § 1396a(a)(17)(B) requires only that the SSI income disregards be applied to any actual income of SSI medically needy persons, not to any income of the ineligible spouses of

**11.** With regard to the income disregards, under the SSI program the income of an ineligible spouse is designated as either earned or unearned income. 42 U.S.C. § 1382a(a); 20 C.F.R. §§ 416.1102–1124 (45 Fed.Reg. 65547–65550, October 3, 1980). From first unearned, and then earned, income, an allocation is deducted for any ineligible children in the household. 20 C.F.R. § 416.1163 (45 Fed.Reg. 65555, October 3, 1980). Thereafter, if the remaining amount of the ineligible spouse's income exceeds more than one-half of the applicable rate for the SSI eligible spouse, the eligible and ineligible spouses are treated as an eligible couple. *Id.* This status as an eligible couple means, *inter alia*, that any remaining earned income of the ineligible spouse is deemed to the eligible spouse, *i. e.*, that the earned income of the eligible spouse is combined with the income of the ineligible spouse. 42 U.S.C. § 1382c(f); 20 C.F.R. § 416.1163. To the augmented income of the eligible spouse are then applied the SSI income disregards, as defined in 42 U.S.C. § 1382a(b); 20 C.F.R. §§ 416.1112, .1124.

From the resulting figure, the agency arrives at the amount of SSI benefits for the eligible spouse. 20 C.F.R. § 416.1163. *See id.* and the accompanying examples.

**12.** With respect to the SSI budgeting scheme contained in 42 C.F.R. § 435.721, this section governs financial eligibility requirements in states that provide medicaid to SSI recipients, or to SSI recipients and to persons receiving a state supplement. In such states, the agencies, under certain circumstances, must use the budgeting scheme under the supplement program, and not under the SSI program, in determining the medicaid eligibility of aged, blind, or disabled persons. *See* 42 C.F.R. §§ 435.-721(c)(2) & (d). The defendant Blum contends that this section has no application in this case. Plainly, however, the regulation indeed applies, for the State of New York provides state supplements. *See, e. g.*, N.Y.Soc.Serv.Law § 207; *In re Casey*, 56 A.D.2d 72, 391 N.Y.S.2d 173 (2d Dep't 1977).

SSI medically needy persons. Furthermore, the defendants note that, although the regulations that preceded the provisions contained in 42 C.F.R: § 435 et seq. contained the phrase "budgeting methodology", see 42 C.F.R. §§ 448.3(b)(2)(iii) & (iv), recodified at 42 C.F.R. §§ 435.721(c), .811, .822(b)(1), .831(a)(2), the present regulations have no such reference, see, e. g., 42 C.F.R. § 435.831(a)(2), thus allegedly signifying that state agencies need not apply the SSI budgeting methodology to SSI medically needy individuals. Also, the defendants urge that application of the SSI income disregards only to the income of SSI medically needy persons comports fully with the requirements of the federal medicaid scheme. The medicaid program, as well as the AFDC program, it is alleged, rests upon a family household concept designed to reflect the economies of scale as family size increases. Citing 42 C.F.R. §§ 435.-811, .812(b); 42 U.S.C. §§ 601, 602. New York's scheme of public and medical assistance, the defendants observe, also rest upon a "household" plan, see N.Y.Soc.Serv.Law §§ 131–a(1), (3), 366.2(a); 18 N.Y.C.R.R. §§ 352.1, .2, 360.25, .5, which is designed to insure that actual income to all households of the same size approximates the state determined level of need for a household of that size. Because the SSI program, which is geared toward the individual, see 42 U.S.C. §§ 1381, 1381a, 1382, recognizes economies of scale through its allocation, deeming, and comparison of household size provisions, see 20 C.F.R. § 416.1163 (1980), to apply the SSI allocation and deeming budgeting methodology to SSI medically needy persons would be to afford to medically needy individuals a double income exemption. Such a generous exemption, the defendants contend, is not mandated by 42 U.S.C. § 1396a(a)(17)(B). Finally, the defendants aver that HHS has approved New York's method of determining the medicaid eligibility of SSI medically needy persons.

■ Notwithstanding the force of the defendants' arguments, this Court concludes, for the following reasons, that the principle of comparability contemplates application of the SSI budgeting methodology in the determination of eligibility of SSI medically needy persons during the pre-conversion period.

It is of some interest that the defendants have relied only upon one provision of the Social Security Act, namely, 42 U.S.C. § 1396a(a)(17)(B), in making their arguments. To be sure, by its language this section refers only to income disregards. The plain language of § 1396a(a)(10)(C), and of 42 C.F.R. § 401(c), however, refer to "comparable standards", and not merely to comparable income disregards. Also, 42 C.F.R. § 435.831 refers to income deductions, and not disregards. In this regard, the administrator of the medicaid scheme, unlike the defendants in this action, has apparently recognized that, in the area of public assistance, budgeting methodologies actually amount to eligibility rules. Thus, HHS has interpreted the principle of comparability embodied in § 1396a(a)(10)(C)(1) as mandating, and has intended the regulations to require the application of the SSI financial standards to SSI medically needy persons:

> [W]hile a state might use more generous maintenance amounts in determining financial eligibility (i. e.—medically needy level . . . , disregards, or asset exemptions) *all other SSI eligibility criteria are to be used. . . . [A]ll aged, blind and disabled persons . . . must have their eligibility determined using all SSI eligibility rules except or—and only except for—higher dollar amounts for income and resource eligibility levels . . .*

42 Fed.Reg. 2685 (1977) (emphasis supplied). *See Fabula v. Buck*, 598 F.2d at 872. *See also* 43 Fed.Reg. 45176 (1978) (no substantive changes made in the recodified regulations to the medicaid statute). This position by the agency responsible for the enforcement of the medicaid program comports fully with the plain language of the statute. *See Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979); *International Brotherhood of Teamsters v. Daniel*, 439 U.S. 551, 556 n. 20 (1979).

The reasonableness of HHS's interpretation is buttressed by the observation that, contrary to the allegations of the defendants, the medicaid program recognizes not only households, but also individuals. As set forth in its opening section, the Medicaid Act provides medical assistance to "families with dependent children" *and* to "aged, blind or disabled *individuals.*" 42 U.S.C. § 1396(1). The regulations also refer to individuals, as well as to families. *See, e. g.*, 42 C.F.R. §§ 435.800, .811, .822, .831.

■ Other arguments by the defendants are similarly without merit. Clearly, for example, if an agency deems the income of an ineligible spouse to an SSI medically needy person, then that income becomes the income of the medically needy person.[13] Hence, in applying the SSI income disregards, the agency indeed exempts income of the SSI medically needy individual, and not of the ineligible spouse. Furthermore, with respect to the defendants' comparative construction of the former agency regulations and of the recodified CFR provisions, HHS has emphasized that "[n]o substantive changes have been made" in the recodified sections of the regulations. 43 Fed.Reg. 45176 (1978). Finally, HHS's approval of New York's medicaid plan surely does not obviate the need for a judicial determination of the legality of that plan.

Accordingly, inasmuch as the medically needy budgeting procedures used by the defendants during the pre-conversion period failed to include relevant SSI eligibility rules, as required by the principle of comparability, the defendants have violated the Social Security Act and the applicable federal regulations.

■ The plaintiff AFDC medically needy individuals raise the further question of whether the federal principle of comparability requires New York medicaid administrators, in determining the medicaid eligibility of AFDC medically needy persons, to regard as invisible the income and presence of any SSI medically needy spouse or parent who resides with the AFDC medically needy persons. Inasmuch as the conversion to a "209(b)" plan appears to have no direct effect upon the determination of an AFDC medically needy person's eligibility, as evidenced by the absence of any reference to the AFDC medically needy subprogram in 42 U.S.C. § 1396a(f) and by the distinctions drawn in the regulations between "209(b)" plans and AFDC medically needy subprograms, *see* 42 C.F.R. §§ 435.401, .520, .812, .814, this discussion applies to both the pre- and post-conversion periods. Hence, no mootness problem exists.[14]

Pursuant to 42 U.S.C. § 602(a)(24), an agency must ignore the presence and income of any SSI recipient in determining the eligibility of a family for AFDC:

> (a) A State Plan for aid and services to needy families with children must ... (24) provide that if an individual is receiving benefits under [the SSI program], then, for the period for which such benefits are received, such individuals shall not be regarded as a member of a family for purposes of determining the amount of the benefits of the family under this subchapter and his income and resources shall not be counted as income and resources of a family under this subchapter.

Cases certainly follow the literal language of this provision. *See Martinez v. Maher*, 485 F.Supp. 1264 (D.Conn.), *aff'd*, 631 F.2d 5 (2d Cir. 1980) (per curiam); *Nelson v. Likins*, 389 F.Supp. 1234 (D.Minn.1974), *aff'd*, 510 F.2d 414 (8th Cir. 1975); *Genin v. Toia*, 47 N.Y.2d 959, 393 N.E.2d 1026, 419 N.Y.S.2d 953 (1979); *Reeves v. Fahey*, 65 A.D.2d 633, 409 N.Y.S.2d 277 (3d Dep't 1976); *Barton v. Lavine*, 54 A.D.2d 350, 389 N.Y.S.2d 416 (3d Dep't 1976); *Schimmel v. Reed*, 50 A.D.2d 1085, 377 N.Y.S.2d 313 (4th Dep't 1975), *aff'd*, 40 N.Y.2d 887, 357 N.E.2d 1016, 389 N.Y.S.2d 361 (1976). Moreover, the implementing regulation

---

**13.** *See* note 11 *supra*.

**14.** The Court has been informed that the plaintiffs Kenneth and Yvonne Calkins have sepa-

rated. Accordingly, while their claim for injunctive relief may be moot, their claim for declaratory relief and restitution remains alive during the period they were residing together.

tracks closely this same language. *See* 45 C.F.R. § 233.20(a)(1)(ii).

The plaintiffs contend that the requirement of comparable treatment between categorically and medically needy persons requires that this invisibility feature of the AFDC budgeting methodology be applied to the AFDC medically needy person who resides with an SSI medically needy spouse or parent. For example, the plaintiffs assert that it would be illogical to regard an SSI medically needy person as an actual SSI recipient for the purpose of budgeting his medicaid benefits, and yet not regard this person as an SSI recipient for the purpose of budgeting his family's medicaid benefits. Furthermore, the failure to carry through the fiction that medically needy persons are categorically needy, the plaintiffs argue, results in medically needy persons being left worse off, in actual dollars, than if everyone in the family were receiving SSI and AFDC, because the inclusion of the SSI medically needy person's presence and income leads to a diminished allocation of medical assistance to the AFDC medically needy family members. Such a result, it is argued, contradicts the very purpose of the medically needy program.

In response to these arguments, the defendants first maintain that the principle of comparability requires only that AFDC medically needy persons receive the same income disregards as AFDC categorically needy persons. Also, because § 602(a)(24) refers only to the invisibility of an actual SSI recipient, the presence and income of an SSI medically needy person is considered in determining the medicaid eligibility of AFDC medically needy persons, just as the presence and income of an SSI medically needy person is considered in determining a family's AFDC eligibility. In short, the defendants aver, inasmuch as an SSI medically needy person is not disregarded in determining a family's AFDC benefits, an SSI medically needy person is not disregarded in determining a family's AFDC medically needy benefits. Finally, the defendants note that the plaintiffs would have New York medicaid administrators disregard the income of an SSI medically needy individual, irrespective of the amount of income that such an individual might contribute to the family.

As noted above, the principle of comparability mandates that conditions for the medicaid eligibility of AFDC medically needy persons must not be more restrictive than standards for the medicaid eligibility of actual AFDC recipients. Hence, if the income and presence of an SSI medically needy person were disregarded in the computation of medical assistance for the categorically needy, and not disregarded for the computation of medical assistance for the medically needy, such a practice would probably contravene the principle of comparability. In fact, as the defendants note, the language of § 602(a)(24) makes no provision for the exclusion of the income and presence of medically needy persons from the AFDC family unit. Additionally, the medicaid scheme appears to contemplate spousal and parental support as the general rule, *see* 42 C.F.R. § 435.821, while the exclusion of parents and spouses remains the exception. Moreover, under the defendants' practices, neither categorically nor medically needy individuals enjoy the benefits of such an invisibility rule. Thus, both groups of medicaid recipients appear to receive comparable treatment. *Cf: Friedman v. Berger,* 547 F.2d at 730.

In this regard, the legislative history surrounding § 602(a)(24) offers two different rationales for the inclusion of only actual SSI recipients in the statute. *Firstly,* Congress apparently intended this section to embody "the usual rule against payment of benefits under more than one public assistance plan" by removing any aged, blind, or disabled recipient of federal assistance from the AFDC household. H.R.Rep.No.92–231, 92nd Cong., 2d Sess., *reprinted in* 1972 U.S. Code Cong. and Admin.News, at 5171. As HHS has observed, although Congress was aware of the differences in AFDC benefits that would follow from the exclusion of the presence and income of an actual SSI recipient, Congress nevertheless "intended to prevent duplicate counting of income and resources of individuals eligible under both

programs and that the differences in payments will be offset by entitlement to or exclusion from other benefits, such as Medicaid." 41 Fed.Reg. 54489 (December 14, 1976). *Secondly*, as reflected in the language of the statute, Congress intended that agencies should not require an SSI recipient to apply his benefits towards the maintenance of his family, or, conversely, that the AFDC family unit should not rely upon the income of an SSI beneficiary for their support. Hence, HHS, interpreting this section, has observed that the provision "prohibits the counting of income and resources of [an SSI recipient] *as income and resources available to an* assistance unit applying for or receiving [AFDC]" HEW Social and Rehabilitation Service, Program Instruction, APA–PI–78–8 (December 20, 1973). It thus seems clear that § 602(a)(24) evinces a Congressional concern for the SSI recipient at least as much as for the AFDC recipient. At the same time, however, Congress recognized the advantage afforded by economies of scale to SSI beneficiaries who reside with AFDC beneficiaries or other persons, and, accordingly, provided for a reduction of SSI cash benefits when an SSI recipient resides with an AFDC recipient or other person. *See* 42 U.S.C. § 1382c(f). *See also Nelson v. Likins*, 389 F.Supp. at 1238. Given this legislative history, then, the absence of any reference to the SSI medically needy in § 602(a)(24) is explained: such persons were of no apparent concern to Congress in the promulgation of this provision.

Both plaintiffs and defendants place extensive reliance upon patently contradictory, informal positions of HHS with respect to the application of § 602(a)(24) to the medically needy. Formerly, HHS had interpreted the medicaid scheme as imposing upon agencies the requirement of ignoring the presence and income of SSI medically needy persons in computing the medicaid eligibility of AFDC medically needy persons in computing the medicaid eligibility of AFDC medically needy persons. HEW Medical Services Administration Medical Assistance Manual, § 4–30–30, p. 14 (July 8, 1976), *reprinted in* 2 CCH Medicare & Med-

icaid Guide ¶ 14,311.17, at 6189–90; HEW Policy Interpretation Question, PIQ 76–156 (September 28, 1976). This policy of HHS, however, subsequently changed, and the agency indicated that the income of an SSI medically needy person is counted in determining the medicaid eligibility of AFDC medically and categorically needy persons. Letter by Will Wolstein, Acting Director, Office of Administration, Medicaid Bureau, Department of HEW, to The Honorable Barber B. Conable, Jr., House of Representatives (attached as Exhibit D to attorney Rene H. Reixach's affidavit in support of plaintiffs' motion for summary judgment). In view of the inconsistency of these positions, the Court is inclined to rely upon its own judgment that, as noted above, SSI categorically and medically needy persons presently receive comparable treatment. *See International Brotherhood of Teamsters v. Daniel*, 439 U.S. 551, 566 n. 20, 99 S.Ct. 790, 800, 58 L.Ed.2d 808 (1979); *Espinoza v. Farah Manufacturing Company, Inc.*, 414 U.S. 86, 94–95, 94 S.Ct. 334, 339, 38 L.Ed.2d 287 (1973).

Aside from the application of an "invisibility" rule, a more fundamental question raised by the plaintiffs is whether the principle of comparability requires that medically needy persons not be left financially worse off, in terms of their non-medical needs, than if everyone in the family were categorically needy, and thus recipients of federal assistance. They are not contending that in computing their medicaid eligibility, the defendants reduced their income below the level determined by the State of New York as necessary for their maintenance. *See* S.Rep.No.404, 89th Cong., 1st Sess., *reprinted in* 1965 U.S.Code and Cong. and Admin.News 1943, 2019; 42 C.F.R. §§ 435.814, .816; *Aitchison v. Berger*, 404 F.Supp. at 1148–49.

This Court concludes, however, that the principle of comparability does not support such a position. The notion of comparability appears to embrace only the requirements for medicaid eligibility and the extent of medical assistance. *See* IV A(a) *supra* at 25. Hence, because the plaintiffs'

argument addresses an incident of medicaid determinations, as opposed to the manner of making such determinations, it necessarily seems to fall beyond the scope of the principle of comparability. This is true even though the family of a marginally employed, income generating aged, blind, or disabled person may be effectively penalized for the labors of such a person.

Accordingly, inasmuch as the defendants include the SSI medically needy spouse or parent in determining the medicaid eligibility of an actual AFDC family unit, the defendants' scheme for computing the medicaid budgets of AFDC medically needy persons who reside with SSI medically needy persons does not run afoul of the federal principle of comparability.

### D.

█ Finally, relying on 42 C.F.R. § 435.-404, one group of pre-conversion plaintiffs raise the question of whether medically needy persons who qualify as both SSI and AFDC medically needy must be provided a choice with respect to the category under which they wish to have their medicaid benefits computed. Specifically, those plaintiffs who are both SSI and AFDC medically needy contend that § 435.404 grants them the option, not presently available to them, of having their eligibility for, and amount of, medical assistance determined separately from the AFDC medically needy family unit and under the SSI budgeting methodologies enjoyed by SSI medically needy persons.

The defendants, however, contend that any choice belongs to the applicant as a household, arguing that there is no federal requirement that a family applying for medical assistance be divided into separate households for purposes of determining medicaid eligibility. Moreover, the defendants argue further, to create separate households would both contravene the federal requirements that families of the same size be treated similarly, see 42 C.F.R. § 435.811, and ignore the requirement that income and resources of spouses or parents be considered as available income to their

families, see 42 C.F.R. § 435.21. In addition, the defendants note that in determining the medical assistance eligibility for the plaintiff households, they applied the SSI income disregards, which were more favorable than AFDC disregards. Thus, the defendants observe, the "choice of category" eligibility determination, which is available to the household, has been afforded the plaintiffs, since they have been given the benefit of the more beneficial income disregards. Finally, the defendants note that New York has not been cited for being out of compliance with federal requirements with respect to this issue, and assert that the plaintiffs have ignored the requirement of 42 U.S.C. § 1396a(a)(19) that eligibility for medical assistance be determined in a manner consistent with simplicity of administration.

Turning to the language of § 435.404, this provision reads as follows:

§ 435.404. *Applicant's* choice of category.

The agency *must* allow an *individual* who would be eligible under more than one category to have *his eligibility* determined for the category *he selects.* (emphasis supplied).

Plainly, this regulation addresses the determination of medicaid eligibility for an individual, and not for the family of such an individual. Also plainly, this provision requires that an individual with dual eligibility be permitted to select the category under which he wishes to have his, not his family's, medicaid eligibility computed. Thus, in the absence of any indication from the language of § 435.404 that individual connotes anything other than individual, it is difficult, if not impossible, to accept the defendants' argument that an SSI and AFDC medically needy person cannot choose the category under which he wishes to be considered. Such a construction would fly in the face of unquestionably explicit language.

Accordingly, the defendants' practices of interpreting individual to mean family directly conflicts with the simple, unambiguous language of 42 C.F.R. § 435.404.

### V.

Having found in favor of certain plaintiffs on two claims, namely, the application of the SSI budgeting methodology to SSI medically needy persons, and the choice of category election available to individuals who are both SSI and AFDC medically needy, it is unnecessary to consider the plaintiffs' equal protection claims in regard to these issues. Hence, this Court need only assess the equal protection question raised by the AFDC medically needy plaintiffs concerning the allegedly discriminatory classification between families comprised of AFDC and SSI categorically needy persons on the one hand, and families comprised of AFDC and SSI medically needy persons on the other hand, a classification that arises by virtue of the defendants' practices to include the presence and income of the SSI medically needy person in determining the medicaid eligibility of his AFDC medically needy family.

 The parties do not appear to disagree that the proper standard of review is whether any reasonable basis exists for the defendants' method of computing the medicaid budgets of AFDC medically needy persons who reside with SSI medically needy persons. *See, e. g., Dandridge v. Williams*, 397 U.S. 471, 484–86, 90 S.Ct. 1153, 1161–62, 25 L.Ed.2d 491 (1970). For the following reasons, this Court concludes that the defendants' practices satisfy this minimal scrutiny.

Notwithstanding the force of plaintiffs' arguments regarding the diminished amount of income retained by medically needy persons, as compared to that income retained by categorically needy persons, it is reasonable for the defendants to require the income of SSI medically needy persons, who are not recipients of SSI federal assistance, to be made available to AFDC medically needy families. As noted above, spousal and parental support appears to be the general rule under the medicaid program. Thus, given the absence of any clear statutory or regulatory language requiring the exclusion of SSI medically needy persons, the defendants have a reasonable basis for concluding that the income of SSI medically needy persons should be applied to AFDC medically needy family members. Moreover, the double-counting problems attendant to determining benefits for AFDC and SSI recipients who reside in one household, as well as the desire that AFDC individuals should not have to rely upon the federal assistance benefits received by SSI beneficiaries, represent reasonable justifications for creating the classification in the first instance.

In short, although the plaintiffs urge this Court to adopt at least a narrow rule that would require administrators to disregard the presence and income of an SSI medically needy person when inclusion would reduce the non-medically related income of an AFDC medically needy person, the Equal Protection Clause does not mandate such a holding. Irrespective of the inequities created under the present scheme used by the defendants, the plaintiffs' claim does not amount to constitutional stature under the Equal Protection Clause of the Fourteenth Amendment.

### VI.

The next issue concerns the scope of relief that this Court shall award those successful plaintiffs in this action. In this regard, the plaintiffs seek declaratory and monetary relief against the defendants, whom the plaintiffs have sued in their individual and official capacities. The monetary relief sought by the plaintiffs is, for the named plaintiffs, restitution of all amounts wrongfully paid by them for medical care, and, for the absent class members, recomputation for the three month period prior to the month of the conversion. As an alternative request for relief for the named plaintiffs, these persons request restitution of wrongfully paid sums from the date of the commencement of this action.

None of the defendants challenge the power of this Court to award declaratory relief in this action against the defendants in their official capacities. *See, e. g., Scheuer v. Rhodes*, 416 U.S. 232, 237, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974); *Edel-*

man v. Jordan, 415 U.S. 651, 664, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974); Rosado v. Wyman, 397 U.S. 397, 420, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); McKinnon v. Patterson, 568 F.2d 920, 934 n. 4 (2d Cir. 1977), cert. denied, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978); Rothstein v. Wyman, 467 F.2d 226, 236 (2d Cir. 1972), cert. denied, 411 U.S. 921, 93 S.Ct. 1552, 36 L.Ed.2d 315 (1973). All defendants, however, challenge under the Eleventh Amendment and under 42 U.S.C. § 1983 the award of any monetary relief. The county defendants also assert the absence of any personal involvement, and raise affirmative defenses of good faith.

A.

■ Turning first to the question of monetary relief, it is clear that the Eleventh Amendment bars any direct restitution by the State Commissioner, in her official capacity, of medical expenditures wrongfully paid by the named plaintiffs. As the Supreme Court has unequivocally held, such an award would amount to expenditures from the State treasury, and hence would be prohibited under the Court's interpretation of the Eleventh Amendment. See, e. g., Edelman v. Jordan, 415 U.S. at 664–66, 94 S.Ct. 1347, 1356–57, 39 L.Ed.2d 662; McAuliffe v. Carlson, 520 F.2d 1305, 1307 (2d Cir. 1975), cert. denied, 427 U.S. 911, 96 S.Ct. 3199, 49 L.Ed.2d 1203 (1976); Rothstein v. Wyman, 467 F.2d at 236–37. Moreover, it appears that § 1983 in no way lifts this bar against non-prospective monetary awards. See Quern v. Jordan, 440 U.S. 332, 339–41, 346–47, 99 S.Ct. 1139, 1144–45, 59 L.Ed.2d 358 (1979); Edelman v. Jordan, 415 U.S. at 677, 94 S.Ct. at 1362; Davis v. Smith, 607 F.2d at 540; Holley v. Lavine, 605 F.2d 638, 647–48 (2d Cir. 1979), cert. denied sub nom. Blum v. Holley, 446 U.S. 913, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980).

■ Examining the situation of the county defendants, the general rule is that the Eleventh Amendment is not applicable to suits for monetary damages against the county. See, e. g., Lake Country Estate v. Tahoe Planning Agency, 440 U.S. 391, 401,

99 S.Ct. 1171, 59 L.Ed.2d 401 (1979); Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977); Moor v. City of Alameda, 411 U.S. 693, 717–21, 93 S.Ct. 1785, 1799–01, 36 L.Ed.2d 596 (1973); Edelman v. Jordan, 415 U.S. at 667 n. 12, 94 S.Ct. at 1358; Holley v. Lavine, 605 F.2d at 642–43. The contention raised by the County Commissioners, however, are that they fall within the "arm of the State" exception of Mt. Healthy. In view of the Second Circuit's rejection of the argument in Holley v. Lavine, supra, and in view of the fact that counties are payors of the first instance of medicaid benefits, see Regan v. Toia, 54 A.D.2d 46, 387 N.Y.S.2d 309, 312 (4th Dep't), aff'd, 40 N.Y.2d 837, 356 N.E.2d 276, 387 N.Y.S.2d 832 (1976), appeal dismissed, 429 U.S. 1082, 97 S.Ct. 1087, 51 L.Ed.2d 528 (1977), this Court does not share the defendants' characterization of their positions.

Thus, the County Commissioners are not protected under the Eleventh Amendment against a judgment of monetary relief in favor of the successful named plaintiffs. Moreover, in the absence of any Congressional intent to the contrary, § 1983 does not seem to impose a barrier against an award against these defendants for restitution of wrongfully paid medical expenses. See Monell v. New York City Department of Social Services, 436 U.S. 658, 690 n. 54, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978) (the holding that the local school board was a "person" under § 1983 was limited to local bodies that are not considered part of the State for Eleventh Amendment purposes). See also Holley v. Lavine, 464 F.Supp. 718, 723–25 (W.D.N.Y.), aff'd, 605 F.2d 637 (2d Cir. 1979), cert. denied sub nom. Blum v. Holley, 446 U.S. 913, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980).

■ Finally, in view of the absence of any constitutional or statutory bar to an award of retroactive monetary relief, the County Commissioners cannot succeed on their claims that this Court lacks the power to order the relief requested for absent class members under 42 U.S.C. § 1396a(a)(34). This section provides that

(a) A State plan for medical assistance must—

* * * * * *

(34) provide that in the case of any individual who has been determined to be eligible for medical assistance under the plan, such assistance will be made available to him for care and services included under the plan and furnished in or after the third month before the month in which he made application ... for such assistance if such individual was ... eligible for such assistance at the time such care and services were furnished.

Inasmuch as certain absent class members have wrongfully been compelled to expend funds for their medical care, § 1396a(a)(24) seems a necessary incident of this Court's determination that the defendants have wrongfully determined medicaid benefits for medically needy persons.

In view of this disposition, it is unnecessary to consider the named plaintiffs' alternative request for relief.

### B.

.Turning to the arguments raised by the County Commissioners, these defendants first aver that they were not personally involved in the determination of the plaintiffs' eligibility for and amount of medical assistance. Relying on *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

▮▮▮ Certainly a showing of personal participation is a prerequisite to recovery of monetary or other relief under § 1983. Because no person can be held liable under a theory of *respondeat superior,* a public official can be held liable only if he causes, or was responsible for, the deprivation. *See, e. g., Monell v. New York City Department of Social Services,* 436 U.S. at 663 n. 7, 691, 694, 98 S.Ct. at 2037; *Rizzo v. Goode,* 423 U.S. at 370–71, 96 S.Ct. at 603–04; *Coffy v. Multi-County Narcotics Bureau,* 600 F.2d 570, 580 (6th Cir. 1980); *McKinnon v. Patterson,* 568 F.2d at 934; *Duchesne v. Sugarman,* 566 F.2d 817, 830 (2d Cir. 1977). In this Circuit, however, "[i]t is not necessary

... that the [defendants] directed any particular action with respect to these specific individuals, only that they *affirmatively* promoted a policy which sanctioned the type of action which caused the violation." *Duchesne v. Sugarman,* 566 F.2d at 831 (emphasis in original). Applying this principle to the facts of the instant case, it appears that the County Commissioners were indeed "*personal[ly] responsib[le]*" for the deprivation of the plaintiffs' rights. *Id.* at 830 (emphasis in original). As chief administrators of the county departments of social services, these defendants supervised the determination of medicaid benefits for all medically needy persons. Hence, inasmuch as the County Commissioners furthered the application of the contested budgeting practices to the situations of the plaintiffs, they can be said to have "affirmatively promoted" a scheme that violated the plaintiffs' rights.

Given this causal relationship between the defendants' conduct and the plaintiffs' deprivation, the next question turns upon whether the County Commissioners can prevail upon their affirmative defenses of good faith against an award of monetary relief.

▮▮▮ Under certain circumstances, a public official can assert a defense of good faith, or qualified immunity. *See, e. g., Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Second Circuit, however, has ruled that a County Commissioner of Social Services cannot claim such a defense against recoveries of wrongfully withheld AFDC benefits, resting its conclusion upon the absence of any discretionary action to be taken in regard to the disbursement of such benefits and upon the different nature of statutory, as opposed to constitutional, violations. *Holley v. Lavine,* 605 F.2d at 645. *Cf: Gomez v. Toledo,* 100 S.Ct. at 1923; *Morrison v. Jones,* 607 F.2d

1269, 1274 (9th Cir. 1979), *cert. denied*, 445 U.S. 962, 100 S.Ct. 1648, 64 L.Ed.2d 237 (1980) (county director of social services may claim a qualified immunity). Here the County Commissioners lacked discretion to withhold medicaid benefits. Under the medicaid program, these administrators were required to apply the SSI financial eligibility rules, and to afford medically needy persons with dual eligibility an option to select the category under which they wished to be considered. As a result of the defendants' omissions, the plaintiffs were compelled to incur medical expenses that otherwise would have been covered by the medicaid program. Hence, the County Commissioners cannot assert a claim of qualified immunity.

█ Even if the County Commissioners could assert defenses of good faith, these contentions would not prevail.

As originally set forth in *Scheuer v. Rhodes*, 416 U.S. at 247–48, 94 S.Ct. at 1691–92, the test for qualified immunity provided:

> [I]n varying scope, a qualified immunity is available to officers of the executive branch of government, the variations being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of these circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for actions performed in the course of official conduct.

*See Procunier v. Navarette*, 434 U.S. at 561, 98 S.Ct. at 859; *O'Connor v. Donaldson*, 422 U.S. at 577, 95 S.Ct. at 2494; *Duchesne v. Sugarman*, 566 F.2d at 833 and n. 32. *See also Butz v. Economou*, 438 U.S. 478, 496, 98 S.Ct. 2894, 2905, 57 L.Ed.2d 895 (1978). In *Wood v. Strickland*, 420 U.S. at 322, 95 S.Ct. at 1000, the Supreme Court refined this both subjective and objective test:

> [An official] is not immune from liability for damages under § 1983 if he knew or reasonably should have known that the

action he took within his sphere of official responsibility would violate the constitutional rights of the [person] affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the [person].

*See Procunier v. Navarette*, 434 U.S. at 561, 98 S.Ct. at 859; *O'Connor v. Donaldson*, 422 U.S. at 577, 95 S.Ct. at 2494; *Reese v. Nelson*, 598 F.2d 822, 826–27 (3d Cir.), *cert. denied*, 444 U.S. 970, 100 S.Ct. 463, 62 L.Ed.2d 384 (1979); *McKinnon v. Patterson*, 568 F.2d at 832–33; *Duchesne v. Sugarman*, 566 F.2d at 832–33; *Sala v. County of Suffolk*, 604 F.2d 207, 209–10 (2d Cir. 1979), *judgment vacated*, 446 U.S. 903, 100 S.Ct. 1827, 64 L.Ed.2d 255 (1980) (in light of *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980)). *See also Butz v. Economou*, 438 U.S. at 498, 98 S.Ct. at 2906. *Cf: Lake Country Estates v. Tahoe Planning Agency*, 440 U.S. 391, 406, 99 S.Ct. 1171, 1180, 59 L.Ed.2d 401 (1979). As applied in this Circuit, the test of good faith requires further that "higher-ranking officials ... be held to a greater standard of the knowledge of the law." *Duchesne v. Sugarman*, 566 F.2d at 833 n. 32.

Assessing the Commissioners' actions under these criteria, these defendants fall short of establishing a defense of qualified immunity. At the time of the plaintiffs' medicaid determinations, federal law and HHS policy statements required that SSI financial eligibility criteria be used applied to SSI medically needy persons and that qualified individuals be provided a choice of categories. Because the actions of the County Commissioners ran directly contrary to this federal law, of which the defendants were obliged to know and follow, their behavior cannot support a claim of good faith or of qualified immunity.

### C.

For the foregoing reasons, the County Commissioners are liable to the named and absent class members. In this regard, inasmuch as the counties are payors in the first instance of medicaid benefits, it seems ap-

propriate that they bear the costs of meeting the plaintiffs' claims for restitution and relief under 42 U.S.C. § 1396a(a)(34). Accordingly, it is unnecessary to consider questions regarding the individual liability of the State Commissioner.

## VII.

Finally, the plaintiffs have requested an award of attorneys' fees under the Civil Rights Attorney's Fees Act of 1976, 42 U.S.C. § 1988, to be determined by this Court upon submission of time records.

■■■ Section 1988 provides that "[i]n any action or proceeding to enforce [42 U.S.C. § 1983] . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fees as part of the costs." In enacting this provision, Congress clearly intended that, ordinarily, prevailing plaintiffs should receive attorneys fees unless special circumstances would render such an award unjust. *See* S.Rep.No.94–1011, 94th Cong., 2d Sess., *reprinted in* [1976] U.S.Code Cong. & Admin.News 5908, 5912. Courts have consistently followed this congressional intent, regarding the award of fees as the general rule, and not an exception. *See, e. g., Sethy v. Alameda County Water District,* 602 F.2d 894, 897 (9th Cir.), *cert. denied,* 444 U.S. 1046, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980); *Ross v. Horn,* 598 F.2d 1312, 1322 (3d Cir. 1979), *cert. denied,* 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980); *Gagne v. Maher,* 594 F.2d 336, 389 (2d Cir. 1979), *aff'd,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); *Mid-Hudson Legal Services, Inc. v. G. & U. Inc.,* 578 F.2d 34, 37–38 (2d Cir. 1979); *Holley v. Lavine,* 64 F.Supp. at 725. Application of this general rule, however, involves a consideration of several factors:

[1] whether a person in the plaintiff's position would have been deterred or inhibited from seeking to enforce civil rights without an assurance that his attorneys' fees would be paid if he were successful . . . ;

[2] the nature and extent of the right and interests at stake . . .

[3] the size of the benefits conferred by the suit on the public or on others;

[4] the amount of any fund created by the litigation (and its adequacy to cover the plaintiffs' costs and compensate him for actual damages);

[5] the presence or absence of any bad faith or obdurate conduct on the part of either party; and

[6] any unjust hardship that a grant or denial of fee-shifting might impose.

*Zarcone v. Perry,* 581 F.2d 1039, 1044 (2d Cir. 1978), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979).

Plainly, certain plaintiffs have "prevail[ed]" upon two claims. Moreover, the defendants are not, and indeed can not, argue that the size of any likely benefits conferred upon the public would be de minimis, or that the nature and extent of the interest at stake are insignificant, or that all of the prevailing plaintiffs would have vigorously pursued this litigation by investing their meager funds in privately retained counsel.

■■■ The defendants instead contest an award of attorneys' fees on other grounds. The defendant Blum, for example, argues that this suit is not a § 1983 action, insofar as the plaintiffs' claims under the Social Security Act are not cognizable under § 1983. Thus, the State Commissioner argues, the Eleventh Amendment poses a bar to an award of attorneys' fees. Citing *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). To the extent that the Supreme Court has squarely held not only that § 1983 and § 1988 embrace violations under the Social Security Act, *see Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), this argument by the State Commissioner must be rejected. The Eleventh Amendment is therefore no bar. *See Hutto v. Finney, supra,* Blum argues further that the status of the plaintiffs' attorneys as employees of a federally funded organization, the Legal Service Corp., precludes any award of fees because it would be unjust to require taxpayers to pay twice for the same legal services. This argument can too be dis-

missed, however, for it is well settled in this Circuit that attorneys of publicly funded legal offices can recover fees. *See, e. g., Torres v. Sachs*, 538 F.2d 10, 12–13 (2d Cir. 1976); *Holley v. Lavine*, 464 F.Supp. at 725. Next, the State Commissioner asserts that the allowance of fees in all actions arising under statutory rights, would represent an abuse of judicial resources and of the Civil Rights Act. Ignoring the generalized nature of such a contention, the fact remains that attorneys' fees are appropriate for violations of the Social Security Act. See *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). Finally, the defendant Blum objects that the request for attorneys' fees are unsupported by accurate, current time records. To be more precise, this Court notes that the plaintiffs' request for fees is supported by no records whatsoever. Such an absence of records, however, certainly does not bar this Court from adjudicating the merits of the plaintiffs' claim for fees.

Aside from these arguments by the State Commissioner, the County Commissioners also raise various arguments in opposition to an award of fees against them. It is unnecessary, however, to address these arguments. In the judgment of this Court, the defendant Blum, in her capacity as Commissioner of the New York State Department of Social Services, should bear such expenses because she is the chief administrator of the State medicaid program and it was her policies that the County Commissioners were effecting.

Accordingly the plaintiffs' motion for attorneys' fees is granted against the defendant Barbara Blum in her official capacity, in an amount to be set by this Court upon the submission of papers, and is denied against the County Commissioners.

VIII.

The plaintiffs' motions for class action certification and for summary judgment are therefore granted to the extent set forth in the above opinion. The defendants' motions for dismissal of the complaints are denied, and for cross-summary judgment are granted to the extent set forth in this decision.

A separate Order will follow.